UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| In re:<br><br>IDL DEVELOPMENT, INC.,<br><br>Debtor. | Chapter 11<br>Case No. 18-14808 (CJP) |
| CONTINUUM ENERGY TECHNOLOGIES, LLC,<br><br>ELECTROMAGNETICS CORPORATION,<br><br>Plaintiffs,<br>v.<br><br>IDL DEVELOPMENT, INC.,<br><br>Defendant. | Adv. Proc. No. 19-01013 (CJP) |

**PLAINTIFFS' REPLY IN SUPPORT OF PARTIAL
MOTION TO DISMISS COUNTERCLAIM**

The Plaintiffs[1] respectfully submit this reply in support of their motion to dismiss [D.E. 13] (the "Motion") and in response to the opposition to the Motion [D.E. 22] (the "Opposition") filed by IDL.

**I.  Count II should be dismissed because injunctive relief is not a standalone claim and because IDL fails to state an underlying claim for which the requested injunctive relief is available.**

In its Opposition, IDL essentially concedes that its Count II seeking injunctive relief cannot be a standalone count. *Opposition* at 7-8 (*citing Injunctive Green v. Parts Distribution Xpress, Inc.,* No. CIV.A. 10-11959-DJC, 2011 WL 5928580, at *4 (D. Mass. Nov. 29, 2011) (holding that an injunction is a prayer for relief and not a free-standing count)). IDL argues, however, that it is

---

[1] All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

1

entitled to seek the injunctive relief requested in its Counterclaim because it is the "corollary" to its declaratory judgment count (Count I).  Even if IDL had properly stated a request for injunctive relief, which it has not, the requested relief is extraordinarily broad and beyond the scope of the requested declaratory judgment and should be dismissed or stricken.

As a basis for the requested injunctive relief, IDL alleges that Plaintiffs' Adversary Complaint asserts claims released under the parties' Settlement Agreement, which is clouding title to IDL's claimed intellectual property and interfering with its reorganization attempts.  On this basis it seeks injunctive relief as follows:

> [T]he Plaintiff-in-Counterclaim requests issuance of an injunction, enjoining and prohibiting the Plaintiffs from commencing, continuing or enforcing in any manner or in any place, any action, cause of action, chose in action, suit, claim, proceeding, or demand, known or unknown, foreseen or unforeseen, then existing or thereafter arising in law, of any nature whatsoever whether directly, indirectly, derivatively, or otherwise against IDL, its bankruptcy estate, any successor of IDL, any principal of IDL, and/or any purchaser of the IDL Intellectual Property asserting any right, title or interest in or to the IDL Intellectual Property.

*Counterclaim* ¶ 35.

Under the Declaratory Judgment Act, further relief, including injunctive relief, may be available, but only in keeping with 28 U.S.C. § 2202, which provides that "[f]urther necessary or proper relief based on a declaratory judgment or decree may be granted . . ."  The relief granted, therefore, must be based on the requested declaratory judgment.  Here, IDL seeks a declaratory judgment that IDL is the owner of the intellectual property it uses.  The injunctive relief it requests, however, is exceedingly broad and attempts to cut off any claim CET could assert, including enforcement of a claim or demand, against IDL, any principal of IDL or any purchaser of the intellectual property IDL claims it owns, related to the intellectual property IDL claims it owns.  *Counterclaim* at 17-18 (prayer for relief No. 3).  IDL purports to rely on the parties' Settlement

Agreement as a basis for this requested relief but does not seek declaratory relief on the basis of the releases or covenants not to sue set forth in the Settlement Agreement. Additionally, and as set forth in the Motion, the Settlement Agreement itself is incorporated in the Counterclaim and, as IDL acknowledges, the releases and covenants not to sue therein only relate to claims that existed as of the date of the Settlement Agreement. *Counterclaim* ¶ 20(b),(d). Not only does IDL fail to seek any predicate declaratory relief with respect to these terms of the Settlement Agreement, by its terms the Settlement Agreement does not preclude Plaintiffs from asserting their rights in their intellectual property, as they relate to claims that postdate the Settlement Agreement.

As such, Count II should be dismissed because injunctive relief is not a standalone claim and because IDL fails to allege a predicate claim for which the requested injunctive relief is available.

II. **Count III is barred by judicial estoppel because the Court denied the Plaintiffs relief under Bankruptcy Code section 362(d)(2)(B) relying *exclusively* on IDL's prior statements about the Licensed IP.**

In the Opposition, IDL argues that judicial estoppel does not apply because "the Court did not rely on any of the Debtor's statements, or those of Mr. Bloom, in denying CET's Motion for Relief." *Opposition* at 10. Instead, IDL argues, "The Court denied the Motion for Relief because 'CET *did not introduce evidence* from which the Court could find that the Debtor's interest in the License Agreement was a 'wasting asset.''" *Id.* (emphasis in original). IDL's argument misapprehends the Court's prior order.

As the Court is aware, the Plaintiffs sought stay relief under both Bankruptcy Code sections 362(d)(1) and (2). Among other things, the Plaintiffs argued that "cause" exists under section 362(d)(1) because the Licensed IP is a wasting asset and IDL is not adequately protecting the Plaintiffs' interests from diminution. As to that issue (and contrary to the uncontroverted

3

testimony of John T. Preston), the Court determined that CET had not carried its burden to show that the Licensed IP was diminishing in value, and thus that CET was not adequately protected.

However, Mr. Bloom's testimony has nothing to do with the wasting nature of the Licensed IP under section 362(d)(1), but rather whether the Licensed IP is necessary to IDL's effective reorganization under section 362(d)(2)(B). In the stay relief proceeding, the Plaintiffs argued that the Licensed IP was not necessary to an effective reorganization because IDL admitted that it did not use the Licensed IP. IDL responded with Mr. Bloom's testimony that the Licensed IP was necessary because potential buyers were interested in purchasing IDL's assets with the Licensed IP included. In other words, IDL argued that the Licensed IP was valuable enough to IDL that the Court should deny stay relief. The Court agreed with IDL on section 362(d)(2)(B). The only evidence in the record that could possibly support the Court's conclusion was Mr. Bloom's testimony. Therefore, the Court relied exclusively on this testimony, which is inconsistent with IDL's argument in Count III that the Licensed IP was so worthless that the obligations under the License Agreement are avoidable as fraudulent. For this reason, Count III is barred by judicial estoppel.

**III.    IDL improperly attempts to amend Count III through the Opposition.**

Count III should also be dismissed because IDL improperly attempts to amend Count III through the Opposition. Specifically, IDL now argues that, "Count III of the Counterclaim is premised upon the potential rejection of the License Agreement." *Opposition* at 11. This "premise" is entirely unstated anywhere in Count III, and the Plaintiffs cannot reasonably be expected to respond to unstated allegations. If IDL wishes to amend Count III, it is required to file

a motion to amend under Fed. R. Civ. P. 15, made applicable to this proceeding by Fed. R. Bankr. P. 7015.  Count III should therefore be dismissed.[2]

## IV. Count IV should be dismissed because it cannot state an actionable claim under Chapter 93A.

As set forth in the Motion, not only has IDL failed to allege the requisite elements of a business-to-business claim under Chapter 93A, but it cannot do so.  In its Opposition, IDL argues that Count IV meets the *Twombly* and *Iqbal* plausibility standard sufficient to survive a motion to dismiss.  IDL argues that, regardless of its failure to plead the elements of a Chapter 93A claim, the existence of the License Agreement establishes both a commercial relationship between IDL and Plaintiffs, and that IDL is engaged in trade or commerce.  This argument fails, however, because not only is the License Agreement insufficient to establish either a commercial relationship or that IDL is engaged in trade or commerce, but IDL's own characterizations of the License Agreement belie its position.

The License Agreement was executed the same day as the parties' Settlement Agreement and is incorporated therein.  As such, it was an integral part of the parties' resolution of prior disputes.  With respect to its Count III, IDL itself claims that the only reason it entered into the License Agreement was to resolve its disputes with Plaintiffs, and even claims that it did not (and does not) need the License Agreement for its research.  The parties' only dealings have been in the context of resolving their disputes; the License Agreement is part and parcel of such attempted resolution.  IDL cannot establish that a Settlement Agreement, a component of which is a License Agreement that it seeks to avoid, establishes a commercial relationship among parties with no other dealings.

---

[2] Additionally, IDL argues that Count III is a mandatory counterclaim.  However, IDL's apparent argument is that the allegations support an objection the Plaintiffs' rejection damages claim.  Thus, IDL can assert this as an objection to allowance of the Plaintiffs' proof of claim under Bankruptcy Code section 502(b)(1).

Similarly, the License Agreement does not establish that IDL is engaged in trade or commerce. Notably, IDL does not assert anything about the nature of its operations as an entity in support of this theory. Rather, it argues that because it is obligated to pay fees and royalties under the License Agreement, and is required to escrow data related to its use of the Licensed IP, that is sufficient to establish it is engaged in trade or commerce.

Neither the definition of "trade or commerce" under Chapter 93A, nor Massachusetts courts' interpretations of that term, support IDL's position. The statutory definition makes clear that the entity must be engaged in acts, such as advertising or selling products or services, that either directly or indirectly affect consumers. M.G.L. 93A §1(b). Massachusetts courts have likewise applied the definition to mean that an entity is engaged in trade or commerce when "it advertises or sells any property or services of a kind offered generally by a person for sale to the public in a business transaction." *See Trustees of Boston Univ. v. ASM Communications, Inc.,* 33 F.Supp. 2d 66, 77 (D. Mass. 1998) (quotation marks omitted). Here, IDL does not dispute that it is a research entity that has never advertised or sold a product or a service. The fact that IDL entered into the License Agreement as part of the parties' settlement agreement, that it owes Plaintiffs $9,500,000 plus royalties under the License Agreement, and that it is obligated to escrow data under that Agreement, does not establish that it is engaged in trade or commerce within the meaning of Chapter 93A.

For these reasons, Count IV should be dismissed.

## CONCLUSION

For the foregoing reasons, the Plaintiffs respectfully request that this Court grant this Motion and dismiss Counts II, III and IV of the Counterclaim.

Dated: May 3, 2019

Respectfully submitted,

*/s/ Jeremy R. Fischer*
Jeremy R. Fischer, BBO# 569358
Adrianne E. Fouts, *admitted pro hac vice*
**DRUMMOND WOODSUM**
84 Marginal Way, Suite 600
Portland, ME 04101-2480
Telephone: (207) 772-1941
E-mail: jfischer@dwmlaw.com
afouts@dwmlaw.com

*Counsel to Continuum Energy Technologies, LLC
And Electromagnetics Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that on May 3, 2019, I filed the foregoing Reply with the Court via the CM/ECF system and, as a result of such filing, a copy of the Reply has been served on all parties requesting notice via CM/ECF in this case.

*/s/ Jeremy R. Fischer*
Jeremy R. Fischer